IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-101

 Filed: 18 February 2020

Mecklenburg County, No. 17-CVS-18381

STARR LYNN SHEPARD, Plaintiff,

 v.

CATAWBA COLLEGE, Defendant.

 Appeal by plaintiff from order entered 10 July 2018 by Judge Adam M. Conrad

in Superior Court, Mecklenburg County. Heard in the Court of Appeals 16 October

2019.

 Tin, Fulton, Walker & Owen, PLLC, by Cheyenne N. Chambers, for plaintiff-
 appellant.

 Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Luke P.
 Sbarra, and Leila W. Rogers, for defendant-appellee.

 STROUD, Judge.

 Plaintiff appeals trial court order allowing defendant’s motion for summary

judgment and thus dismissing plaintiff’s action. Because plaintiff has forecast

evidence -- viewed in the light most favorable to her and giving her the benefit of any

inferences from the evidence -- which presents a genuine issue of material fact as to

defendant’s negligence as the proximate cause of her injuries sustained in her fall on

defendant’s bleachers, we reverse and remand for further proceedings.

 I. Background
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 On 6 October 2017, plaintiff filed a complaint against defendant alleging that

she was injured by defendant’s negligence in maintaining its bleachers. Plaintiff

alleged she was attending a baseball game, and when she stood up and began to move

from her seat, a “wooden slat . . . moved in such a way that it allowed her foot to get

caught under an adjacent wooden slat and caused her to be thrown off balance and

she fell down the bleachers and was severely and permanently injured.” Defendant

answered plaintiff’s complaint, denying the allegations of negligence and alleging

plaintiff’s contributory negligence as a defense.1 On 18 May 2018, defendant filed a

motion for summary judgment under North Carolina Civil Procedure Rule 56. On 10

July 2018, the trial court granted summary judgment in favor of defendant. Plaintiff

appeals.

 II. Summary Judgment

 Plaintiff contends the trial court erred in granting summary judgment in favor

of defendant.

A. Standard of Review

 The standard of review for a motion for summary
 judgment requires that all pleadings, affidavits, answers to
 interrogatories and other materials offered be viewed in
 the light most favorable to the party against whom
 summary judgment is sought. Summary judgment is
 properly granted where there is no genuine issue of
 material fact to be decided and the movant is entitled to a
 judgment as a matter of law.

1 The defense of contributory negligence is not at issue on appeal, and we will not address it.

 -2-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

Harrington v. Perry, 103 N.C. App. 376, 378, 406 S.E.2d 1, 2 (1991) (citation omitted).

 A defendant is entitled to summary judgment as to
 all or any part of a claim, N.C.G.S. § 1A–1, Rule 56(b)
 (1990), if the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with the
 affidavits, if any, show that there is no genuine issue as to
 any material fact and that defendant is entitled to
 judgment as a matter of law. Specifically, a premises owner
 is entitled to summary judgment in a slip and fall case if it
 can show either the non-existence of an essential element
 of the plaintiff's claim or that the plaintiff has no evidence
 of an essential element of her claim. Only if the movant-
 defendant makes its showing is the nonmovant-plaintiff
 required to present evidence. If the defendant makes its
 showing, the plaintiff is required to produce a forecast of
 evidence showing that there are genuine issues of material
 fact for trial. All inferences of fact must be drawn against
 the movant and in favor of the nonmovant.

Nourse v. Food Lion, Inc., 127 N.C. App. 235, 239, 488 S.E.2d 608, 611 (1997)

(citations, quotation marks, and brackets omitted), aff’d per curiam, 347 N.C. 666,

496 S.E.2d 379 (1998); see Bostic Packaging, Inc. v. City of Monroe, 149 N.C. App.

825, 830, 562 S.E.2d 75, 79 (2002) (“Summary judgment is a drastic measure, and

it should be used with caution, especially in a negligence case in which a jury

ordinarily applies the reasonable person standard to the facts of each case.”).

B. Factual Background

 Viewing the forecast of evidence in the light most favorable to plaintiff, see

Nourse, 127 N.C. App. at 239, 488 S.E.2d at 611, the evidence tends to show that on

18 March 2016, plaintiff was a spectator at a college baseball game at Newman Park.

 -3-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

Plaintiff’s son was the pitcher in his second season of playing for defendant, Catawba

College. The spectators were seated on wooden bleachers which were constructed in

1934.

 Plaintiff was seated in her “usual spot” near the press box, further up in the

bleachers than her husband, who customarily sat closer to the field at their son’s

games, but he was close enough to plaintiff to have a “perfect view” of her. Plaintiff

testified that she stood up from her seat when she suddenly fell, falling about 13 to

15 feet down the bleachers and landing on the pavement, breaking her back as her

“head went into the fence.” Plaintiff does not remember the fall itself as she suffered

major injuries that caused memory loss.

 Plaintiff did not recall what happened between her fall and regaining

consciousness in the hospital, but she stated during her deposition that she

remembered she felt an issue with her foot being “trapped” immediately before her

fall occurred. Plaintiff stated in her deposition that “I was seated in the bleachers

along the first base side three rows down from the press box. I stood up, stepped to

the right; the board flexed, caught my toe and I fell down the bleachers to the ground

below.” Plaintiff recalled that her foot felt “heavy, trapped, heavy, something stuck,

something not right about it, like something was hanging onto it or it couldn’t -- it

couldn’t go anywhere.”

 -4-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 Plaintiff’s husband testified that he saw plaintiff stand up, then he turned his

head toward the field, and in the next moment saw that his wife had fallen down the

bleachers. Plaintiff’s husband stated she told him “[t]hat her foot got caught, that

she couldn’t get her foot -- evidently a board gave way and her foot fell underneath

and that propelled her down the steps.” Due to the severity of plaintiff’s injuries, she

was immediately taken to the hospital by an ambulance and her husband went with

her so neither she nor her husband examined or took photographs of the exact spot

where she fell at the time. Although plaintiff could not identify a specific board she

fell on, at her deposition, plaintiff identified the place where she had been sitting by

marking the “[g]eneral area” with a green X on a photograph of the bleachers.

 On 7 December 2016, plaintiff’s expert witness, Mr. David Harlowe, examined

the bleachers. Mr. Harlowe noted in his report that he had “been performing risk

management work in the athletic and fitness industries for over 21 years.” Mr.

Harlowe stated in his deposition that his inspection was delayed until December 2016

because plaintiff’s counsel had been unable to get permission from defendant for him

to do an inspection.

 Plaintiff’s counsel had notified defendant of plaintiff’s claim by certified mail

on 11 May 2016, within two months after her fall, and specifically requested “access

to the stadium so that our expert witness can inspect the stadium.” Plaintiff’s counsel

also asked defendant to

 -5-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 accept this letter as our formal request to inspect and
 notice, pursuant to the law prohibiting spoliation, to not
 alter, repair, destroy, change, modify or take any remedial
 measure to change the condition of the stadium as it
 existed on the date in question prior to our opportunity to
 conduct a full inspection of the facility.

Plaintiff’s counsel sent another certified letter to defendant on 14 June 2016, again

repeating his request for access to the stadium for inspection by plaintiff’s expert

witness.2 The letter stated, “I again point out Catawba College is on notice to not

alter, repair, destroy, change, modify or take any remedial measures to change the

condition of Newsome Park as it existed on the date in question prior to our

opportunity to conduct a full inspection and analysis of the facility.” In August 2016,

plaintiff’s counsel repeated his request to defendant’s insurance carrier.

 Despite plaintiff’s repeated requests for defendant to preserve the condition of

the bleachers pending an inspection, on 7 December 2016, the day Mr. Harlowe went

to do the inspection, the bleachers in the area noted by plaintiff as where she fell were

being disassembled. Mr. Harlowe saw workers and equipment in the area where they

were disassembling “where the incident happened.” Because several rows of boards

in the area had already been removed, Mr. Hawlowe had to do the inspection of that

area “from the sidewalk at the bottom.” Mr. Harlowe stated in his deposition that the

2 The record indicates that defendant received both certified letters.

 -6-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

bleachers in that area were disassembled either that day or the day before his arrival.

“Only the metal frame” was left in the area where plaintiff had fallen.

 In his inspection of the rest of the stadium, Mr. Harlowe “discovered multiple

examples of rot and decay in other sections of the stadium where spectators were

exposed to dangerous conditions.” Mr. Harlowe’s report noted that “[o]n initial

viewing, the stadium looked like a relic from the World War II era in which it was

constructed. My first impression was that it was a stadium in disrepair that had

been neglected for many years.” “According to the Catawba College athletic website,

the Newman Park grandstand was erected in 1934. The site also states the ‘recent’

improvements were completed in 1996 and 2004, but does not state that the bleachers

were updated in either of those projects.”

 Because the bleachers in the area where plaintiff fell had been disassembled

just prior to his arrival, Mr. Harlowe was unable to take photographs of that area of

the bleachers as it had existed when plaintiff fell, but he had access to photographs

of the area taken prior to December 2016. The photos attached to the report show

discolored wooden boards on a metal frame. “[T]he boards that made up the

walkways and stairs for the stadium were old and rotting. Make-shift steps had been

created by someone over the years to fill the large gap between seatboards and

footboards.” “[T]he wood used for stairs, footboards and seatboards was in poor

condition throughout the stadium and particularly in the section where the plaintiff

 -7-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

fell.” “The gap between seatboards and footboards in the stadium averaged

approximately 13 1/2”. This is three times larger than the recommended 4” gap stated

by the [Consumer Product Safety Commission].” Mr. Harlowe opined “that the

bleachers in Newman Park have never been inspected by a qualified person.” “When

viewing the wood used it is my opinion that the wood was either untreated or had

surpassed its life-expectancy for safe use because of the visible rotting viewed at the

time of the inspection.” Mr. Harlowe concluded from his inspection

 that Catawba College has severely neglected the bleachers
 in the Newman Park baseball stadium which directly led
 to the plaintiff being injured. The inspection showed that
 most of the footboards, seatboards, and make-shift steps
 have been present for many years and show advanced signs
 of rot and lost rigidity when stepped on. It is evident from
 the condition of the bleachers that no safety inspections
 have ever occurred or if they have then the school has never
 taken any actions to correct the hazards. It is my opinion
 that the bleachers should have been condemned many
 years ago and replaced with aluminum bleachers.

 Additionally, the fact that a work crew was in the process
 of dismantling the bleachers while I was inspecting the
 stadium, and without any visible permit, shows that the
 school was trying to fix the problem under the radar to
 potentially reduce their liability in this case. In my opinion
 this was a direct admission of guilt on their part for their
 negligence in taking care of the stadium bleachers.

 Defendant’s forecast of evidence contradicts some of plaintiff’s evidence

regarding her location and actions at the time of the fall. For example, Mr. Jeffrey

Childress, defendant’s assistant athletic director and director of tennis at the time of

 -8-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

plaintiff’s fall, testified that plaintiff was standing on the steps and holding the

railing when she turned to look back, perhaps watching a foul ball, and missed a step

and fell. Mr. Childress did not believe the condition of the steps contributed to her

fall. Two other witnesses, both Catawba College students who were working at the

game, also testified plaintiff was quickly descending the steps when she fell and that

they had attended other games at this stadium and had never had any issues nor

known of any issues with the bleachers. But no matter which witnesses a jury finds

most credible, for purposes of summary judgment, we must view the evidence in the

light most favorable to plaintiff. See id.

C. Negligence Claim

 Plaintiff contends the trial court erred in granting summary judgment in favor

of defendant because she established a prima facie case of negligence.

 In order for a negligence claim to survive summary
 judgment, the plaintiff must forecast evidence tending to
 show (1) that defendant failed to exercise proper care in the
 performance of a duty owed plaintiff; (2) the negligent
 breach of that duty was a proximate cause of plaintiff’s
 injury; and (3) a person of ordinary prudence should have
 foreseen that plaintiff’s injury was probable under the
 circumstances. . . .
 The ultimate issue which must be decided in
 evaluating the merits of a premises liability claim is
 determining whether Defendants breached the duty to
 exercise reasonable care in the maintenance of their
 premises for the protection of lawful visitors. In order to
 prove a defendant’s negligence, a plaintiff must show that
 the defendant either (1) negligently created the condition
 causing the injury, or (2) negligently failed to correct the

 -9-
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 condition after actual or constructive notice of its existence.
 A landowner is under no duty to protect a visitor against
 dangers either known or so obvious and apparent that they
 reasonably may be expected to be discovered and need not
 warn of any apparent hazards or circumstances of which
 the invitee has equal or superior knowledge. However, if a
 reasonable person would anticipate an unreasonable risk
 of harm to a visitor on his property, notwithstanding the
 lawful visitor’s knowledge of the danger or the obvious
 nature of the danger, the landowner has a duty to take
 precautions to protect the lawful visitor.

Burnham v. S&L Sawmill, Inc., 229 N.C. App. 334, 339–40, 749 S.E.2d 75, 79–80

(2013) (citations, quotation marks, ellipses, and brackets omitted). Further,

 [w]hile not an insurer of its customers’ safety, defendant is
 charged with knowledge of unsafe conditions of which it
 has notice and is under a duty of ordinary care to give
 warning of hidden dangers. Evidence that the condition
 (causing the fall) on the premises existed for some period
 of time prior to the fall can support a finding of constructive
 notice.

Carter v. Food Lion, Inc., 127 N.C. App. 271, 275, 488 S.E.2d 617, 620 (1997).

 The owner or proprietor of premises is not an insurer of the
 safety of his invitees. But he is under a duty to exercise
 ordinary care to keep that portion of his premises designed
 for their use in a reasonably safe condition so as not to
 expose them unnecessarily to danger, (but not that portion
 reserved for himself and his employees), and to give
 warning of hidden dangers or unsafe conditions of which he
 has knowledge, express or implied.

McElduff v. McCord, 10 N.C. App. 80, 82, 178 S.E.2d 15, 17 (1970) (citation and

quotation marks omitted).

 - 10 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 Defendant contends plaintiff failed to establish two key requirements for her

claim: proximate cause and notice of the alleged defective condition. Both of

defendant’s arguments focus on plaintiff’s inability to identify the exact place where

she fell and the condition of the exact board at issue. Defendant contends that since

plaintiff cannot identify the exact place where her foot was trapped, she cannot show

either defendant’s notice of a defective condition in that spot or that a defective

condition in that spot was the proximate cause of her fall. We turn first to notice of

the alleged defective condition.

1. Notice of Defective Condition

 Defendant argues plaintiff did not present any

 conclusive evidence demonstrating where she fell, or
 identified any specific condition of the bleachers that
 contributed to her fall. Since Mrs. Shepard and her expert
 did not identify the location and cause of her fall, it is
 impossible for Catawba to have had actual or
 constructive notice of an unknown and unidentified
 defective condition that allegedly caused Mrs. Shepard to
 fall. As such, Mrs. Shepard has failed to forecast any
 evidence of a prima facie case of negligence against
 Catawba.

 Defendant primarily relies on Roumillat v. Simplistic Enterprises, Inc., 331

N.C. 57, 414 S.E.2d 339 (1992) abrogated by Nelson v. Freeland, 349 N.C. 615, 507

S.E.2d 882 (1998),3 in contending plaintiff failed to demonstrate it had constructive

3 Nelson v. Freeland, 349 N.C. 615, 507 S.E.2d 882 (1998), notes that the distinction in the level of
care needed for invitees versus licensees, as noted in Roumaillat, is abolished, but Roumillat’s

 - 11 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

knowledge of the allegedly defective condition. In Roumillat, the plaintiff slipped and

fell in a parking lot of a Bojangles restaurant. Id. at 61, 414 S.E.2d at 340-41.

Plaintiff contended that there was slippery grease-like substance in the parking lot

and this caused her to fall. Id. at 61, 414 S.E.2d at 341. The Supreme Court held that

the plaintiff failed to forecast any evidence, other than her “bald assertion” that the

“defendant knew or should have known of the greasy substance in its parking lot.”

Id. at 65, 414 S.E.2d at 343. The Court noted that the area was well-lit and plaintiff

had “exited the restaurant within a few feet of the path she used to enter the

restaurant, and her husband himself, less than an hour before, successfully traversed

the very area on which plaintiff slipped.” Id. at 66, 414 S.E.2d at 343-44.

 As there was no indication of how long the substance had been there, how it

got there, or that any of the defendant’s employees had been notified of its presence,

the Supreme Court noted that

 [w]hen the unsafe condition is attributable to third parties
 or an independent agency, plaintiff must show that the
 condition existed for such a length of time that defendant
 knew or by the exercise of reasonable care should have
 known of its existence, in time to have removed the danger
 or to have given proper warning of its presence.

Id. at 64, 414 S.E.2d 343 (citation and quotation marks omitted) (emphasis modified).

discussion of the law regarding actual or constructive notice of a defective condition is still
precedential.

 - 12 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 The Court contrasted the plaintiff’s fall on the substance to the fall of a grocery

store customer on an alleged unsafe condition created by a third party in Warren v.

Rosso:

 In Warren, a grocery store patron slipped and fell as
 a result of human excrement that was deposited on the
 floor of defendant’s store. In support of its motion for
 summary judgment, defendant submitted affidavits of
 three employees, each stating that the excrement was
 deposited immediately before plaintiff stepped in it.
 Plaintiff submitted her own affidavit contradicting
 defendant’s evidence that the excrement had fallen onto
 the floor immediately prior to her stepping in it. In her
 affidavit, plaintiff stated that the excrement was dried and
 had footprints in it. In her answers to defendant’s
 interrogatories, plaintiff stated that she was at the
 checkout counter for approximately fifteen minutes and
 during that time she saw no one enter or leave the store.
 Moreover, in her affidavit, plaintiff stated that an
 employee of the store informed her that he knew the
 excrement was on the floor but that it was not his job to
 clean it up. On this basis, the Court of Appeals concluded
 that a dispute existed as to a material fact regarding the
 length of time the excrement was actually on the floor,
 making summary judgment for defendant inappropriate.

Id. at 65, 414 S.E.2d at 343.

 The Supreme Court also noted Southern Railway, where the plaintiff “slipped

and fell on some grain lying in a work area in which plaintiff regularly walked and

had slipped time after time.” Id. at 65-66, 414 S.E.2d at 343 (quotation marks

omitted). The plaintiff in Southern Railway forecast evidence that

 [d]espite receiving complaints about the presence of the
 grain, defendant never took steps to remedy the situation.

 - 13 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 Because defendant was on notice of the dangerous
 condition and plaintiff had no choice but to encounter the
 condition in completing his job duties, the question of the
 reasonableness of defendant’s failure to take additional
 precautions was for the jury to decide.

Id. at 66, 414 S.E.2d at 343 (citation omitted).

 The primary difference between this case and Roumillat is that the unsafe

condition in Roumillat was created by a third party, so evidence of the time period the

condition had existed was crucial to show the defendant’s notice or constructive notice

of the condition. As to the greasy spot in the Bojangle’s parking lot, the Court quoted

Hinson v. Cato’s, Inc:

 Even if a negligent situation could be
 assumed here, had it existed a week, a day, an
 hour, or one minute? The record is silent; and
 since the plaintiff must prove her case, we
 cannot assume, which is just a guess, that the
 condition had existed long enough to give the
 defendant notice, either actual or implied.
 The plaintiff has failed to meet the
 requirements which permit the cause to be
 submitted to the jury.
 271 N.C. 738, 739, 157 S.E.2d 537, 538.

Id. at 67, 414 S.E.2d at 344.

 Roumillat and defendant’s argument both address unsafe conditions created

by a third party. But in this case, the alleged dangerous condition was not created

by a third party; the bleachers were constructed by defendant in 1934 and defendant

was responsible for maintenance of the bleachers since their construction. This

 - 14 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

situation cannot be compared to an ephemeral greasy spot of which the landowner

had not been notified, which may have existed only for “a week, a day, an hour, or

one minute[.]” Id.

 Plaintiff must show “that the condition had existed long enough to give the

defendant notice, either actual or implied.” Id. Here, plaintiff did forecast evidence

that the dilapidated condition of the bleachers had existed for a long time and

defendant should have discovered the condition upon reasonable inspection.

Plaintiff’s evidence tends to show that defendant failed to maintain or inspect the

wooden bleachers constructed over 80 years ago and used regularly for sporting

events and that the wooden boards had deteriorated and weakened throughout the

entire structure; this is evidence of at least constructive notice of the dangerous

condition of the bleachers.

 The ultimate issue which must be decided in evaluating the
 merits of a premises liability claim, however, is whether
 the defendant breached the duty to exercise reasonable
 care in the maintenance of its premises for the protection
 of lawful visitors.
 Reasonable care requires that the landowner
 not unnecessarily expose a lawful visitor to
 danger and give warning of hidden hazards of
 which the landowner has express or implied
 knowledge. This duty includes an obligation
 to exercise reasonable care with regards to
 reasonably foreseeable injury by an animal.
 However, premises liability and failure to
 warn of hidden dangers are claims based on a
 true negligence standard which focuses
 attention upon the pertinent issue of whether

 - 15 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 the landowner acted as a reasonable person
 would under the circumstances.

Rolan v. N.C. Dep’t of Agric. & Consumer Servs., 233 N.C. App. 371, 382, 756 S.E.2d

788, 795 (2014) (citations, quotation marks, ellipses, and brackets omitted).

 Plaintiff’s forecast of evidence was not based upon a claim of an individual

weakened or broken board which may not have been discovered, even if defendant

had regularly inspected and maintained the bleachers, but instead tends to show that

the entire structure had been neglected for many years. The wooden boards were

rotting and decaying such that even a cursory inspection, according to plaintiff’s

expert, would have revealed the defective condition. Plaintiff’s evidence is sufficient

to create a genuine issue of material fact that defendant knew, or should have known

in the exercise of reasonable care, of the dangerous conditions created by the allegedly

rotting and decaying boards in the bleachers.

2. Proximate Cause

 Defendant also argues that plaintiff has failed to show that the defective

condition of the bleacher was the proximate cause of her fall. Since plaintiff could

not identify the exact place where her foot was caught, defendant contends she cannot

show that a defective board caused her fall. Defendant focuses on two cases -- Gibson

v. Ussery, 196 N.C. App. 140, 143, 675 S.E.2d 666, 668 (2009) and Hedgepeth v. Rose’s

Stores, 40 N.C. App. 11, 14, 251 S.E.2d 894, 896 (1979) -- in contending plaintiff failed

 - 16 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

to properly forecast evidence that the allegedly defective bleachers were the

proximate cause of her injuries.

 In Gibson, this Court affirmed the trial court’s order granting a directed verdict

for the defendant, 196 N.C. App.140, 146, 675 S.E.2d 666, 670 (2009), based upon the

absence of any evidence that a defective condition of stairs caused plaintiff to fall:

 plaintiff presented evidence in the form of witness
 testimony that Cynthia fell forward on the staircase, and
 that she did not appear to trip on anything. Testimony also
 showed that she was one of several to descend the
 staircase, but the only one to fall; none of the witnesses
 noticed any problems with the condition of the staircase as
 they descended. One witness testified that she went back
 to inspect the stairs and found the third step from the
 bottom to wobble to and fro under her foot. However, there
 was no testimony about which stair Cynthia fell on and no
 testimony that anyone observed what caused her to fall.
 We agree with the trial court’s conclusion that this
 evidence, taken in the light most favorable to plaintiff, does
 not permit a finding of all elements of a negligence claim
 against defendants. In evaluating the record, we look for
 evidence that takes the element of proximate cause out of
 the realm of suspicion. All of the testimony, taken in the
 light most favorable to plaintiff, provides no more than
 mere speculation that defendants’ alleged negligence was
 the proximate cause of Cynthia’s fall and the injuries that
 may have resulted from it. Doubtless Cynthia was injured
 in some manner as a result of her fall, but there is
 insufficient evidence to support a reasonable inference that
 the injury was the result of defendants’ negligence.

Id., at 144, 675 S.E.2d at 668–69 (emphasis added) (quotation marks omitted).

 In Hedgepeth, the plaintiff contended that the defendant failed to maintain

stairs in a reasonably safe condition based upon a slick, worn metal strip on the

 - 17 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

stairway and the presence of potted plants on the steps which prevented her from

using the stairrail.

 The only evidence introduced by the plaintiff as to
 the condition of the step on which she fell was that it was
 worn and that it was very slick. Plaintiff, however, does not
 know on which step she fell, or even which foot slipped and
 caused her to fall. There is no evidence in this record that
 the condition of the step upon which plaintiff slipped was
 any different from that of the entire flight of steps. Plaintiff's
 evidence tending to show that the steps had a metal strip
 on them, and that the metal strip was worn and that the
 steps were very slick apparently refers to all the steps.
 This is not sufficient evidence to support a finding by the
 jury that the steps had become so worn that their use would
 be hazardous to the store’s patrons. The unsupported
 allegations by the plaintiff that the set of steps on which she
 fell were worn or slick, without evidence of the particular
 defective condition that caused the fall, is insufficient to
 overcome a motion for a directed verdict.

40 N.C. App. 11, 14–15, 251 S.E.2d 894, 896 (emphases added) (quotation marks

omitted).

 This Court also rejected the plaintiff’s argument that the obstruction of the

stairrail by plants caused her fall, since she did not actually know what caused her

to trip, and she could only speculate that she would have been able to avoid a fall by

holding onto the rail

 Plaintiff has the burden to show the cause of her fall. The
 evidence introduced by plaintiff leaves the cause of her fall
 a matter of conjecture. There is no presumption or
 inference of negligence from the mere fact that an invitee
 fell to his injury while on the premises, and the doctrine of
 res ipsa loquitur does not apply to a fall or injury of a

 - 18 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 patron or invitee on the premises, but the plaintiff has the
 burden of showing negligence and proximate cause.
 Plaintiff has failed to meet this burden.

Id. at 16, 251 S.E.2d 894, 897 (citations and quotation marks omitted).

 This case is different from Gibson and Hedgepeth because plaintiff did clearly

identify the place she was sitting in the bleachers, “along the first base side three

rows down from the press box[,]” that she stood, stepped to the right, felt a board flex,

catch her toe, and trap her foot, which resulted in her fall. See Gibson 196 N.C. App.

at 144, 675 S.E.2d at 668–69; Hedgepeth, 40 N.C. App. at 14–16, 251 S.E.2d at 896–

97. Plaintiff had marked the spot with an “X” on a photograph to illustrate her

statements in her deposition. Further, plaintiff’s husband witnessed her stand up in

the area and saw where she fell.4 Plaintiff’s expert provided a detailed report as to

the negligence of defendant in failing to weather-treat, repair, replace, or otherwise

address outdoor rotten wooden bleachers with boards that were at least 75 years old,

perhaps much older.

 Defendant also argues that Mr. Harlowe did not inspect the area where

plaintiff fell because she did not identify where she fell: “Even Mrs. Shepard’s expert,

David Harlowe, testified that he inspected and took photos on the opposite side of the

stadium from where Mrs. Shepard was sitting. Again, this was because Mr. Harlowe

4 Defendant’s witnesses contend that plaintiff did not fall at her seat but that she was walking down
the steps when she fell. But for purposes of summary judgment, we must take the evidence in the
light most favorable to plaintiff. Nourse, 127 N.C. App. at 239, 488 S.E.2d at 611. There is a genuine
issue of material fact regarding where plaintiff fell.

 - 19 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

did not know where Mrs. Shepard fell so his inspection was focused on the entire

stadium.” (Emphasis added.) But we agree with plaintiff that this argument

misrepresents Mr. Harlowe’s testimony:

 [Defendant] misrepresented Harlowe’s deposition
 testimony by asserting that he inspected the entire
 stadium because he did not know where Mrs. Shepard fell.
 Harlowe knew where Shepard fell. In fact, when Harlowe
 visited Catawba he noticed at the outset that Catawba
 was in the process of reconstructing the bleachers in
 question: They were actually disassembling -- they had
 taken down the first three or four rows near the press box
 I don’t know what they did, but those boards were gone.
 And when asked why he did not visit the grandstand
 sooner, Harlowe testified that he waiting for Catawba’s
 permission to inspect the premises.

(Citations, quotation marks, ellipses, and brackets omitted.)

 While defendant is correct that plaintiff was unable to identify the exact board

she stepped on, she did identify the specific area where she was sitting and then fell.

Plaintiff’s evidence also shows that the boards in the bleachers were over 75 years

old, rotting, decaying, and flexed easily. Plaintiff testified that the board flexed

easily, trapping her foot, and causing her fall.

 Although we have already noted the essential factual differences between

Gibson and Hedgepeth, we find it imperative to note another distinguishing feature

of this case -- the potential spoliation of the evidence by defendant. Here, where

defendant was on notice of plaintiff’s claim and her repeated requests to inspect the

bleachers prior to any destruction or repair of the area, the evidence of defendant’s

 - 20 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

removal of the boards in the exact area where plaintiff fell immediately prior to the

inspection by Mr. Harlowe creates an “adverse inference” against defendant that

evidence from an expert inspection of the area where plaintiff fell would be harmful

to defendant:

 “Destruction of potentially relevant evidence
 obviously occurs along a continuum of fault—ranging from
 innocence through the degrees of negligence to
 intentionality.” Welsh v. United States, 844 F.2d 1239, 1246
 (6th Cir. 1988). Although destruction of evidence in bad
 faith “or in anticipation of trial may strengthen the
 spoliation inference, such a showing is not essential to
 permitting the inference.” Rhode Island Hospital, 674
 A.2d at 1234 (citations omitted); see Vodusek v. Bayliner
 Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995) (adverse
 inference proper where plaintiffs, although not acting in
 bad faith, permanently destroyed relevant evidence during
 investigative efforts), and Henderson v. Hoke, 21 N.C. 119,
 146 (1835) (“[i]t is sufficient if [the evidence] be suppressed,
 without regard to the intent of that act”); see also Hamann
 v. Ridge Tool Co., 213 Mich.App. 252, 539 N.W.2d 753,
 756–57 (1995) (“[w]hether the evidence was destroyed or
 lost accidentally or in bad faith is irrelevant, because the
 opposing party suffered the same prejudice”).

McLain v. Taco Bell Corp., 137 N.C. App. 179, 184, 527 S.E.2d 712, 716 (2000).

 The timing of defendant’s disassembly of the exact area of the bleachers where

plaintiff had fallen immediately prior to Mr. Harlowe’s inspection could have been an

unfortunate and innocent coincidence, but taking the evidence in the light most

favorable to plaintiff, see Nourse, 127 N.C. App. at 239, 488 S.E.2d at 611, the record

not only allows an adverse inference as to the condition of the boards in the area

 - 21 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

against defendant, but would also allow an inference that defendant’s destruction of

the evidence was in bad faith.5 See generally McLain, 137 N.C. App. at 184, 527

S.E.2d at 716.

 At the summary judgment hearing, defendant’s counsel purported to address

the spoliation argument as follows:

 Your Honor, typically in these cases what would happen is
 an engineer would go out. Mr. Chandler [,plaintiff’s
 counsel,] through the deposition testimony, went out to the
 facility. There’s been some allegation in the brief of
 spoliation of evidence, and by answering your question I can
 also respond to spoliation. There is actually no spoliation.
 Mr. Chambers [(sic)] was there, took video of the facility.[6]
 And typically in those circumstances an engineer would go
 out and would say, well these boards are in or not in
 tolerance, an accepted tolerance. And there would be
 weight, a load that would be put on them, and an engineer
 would be able to calculate the energy that’s put on a board
 and the engineer would be able to say, well these are within
 or without of tolerance and accepted standards. Those
 standards are usually the ANSI standards or ASTM
 standards for bleacher safety or general engineering
 standards. An engineer would be able to say, based on this
 load and the amount of energy, these aren’t safe stairs. We
 know video was taken by Mr. Chandler when he entered
 the facility, when he had access to the facility.

5 Defendant’s counsel before the trial court and on appeal stated to the trial court that his firm was
not yet involved in the case between June 2016 and December 2016. Defendant’s counsel appeared in
the case when the answer was filed in December 2017. We are not suggesting any bad faith on the
part of defendant’s counsel.

6 It is unclear how an attorney’s video of the bleachers could substitute for testing of the strength of
the boards. The record before this Court did not explain why defendant never responded to plaintiff’s
counsel’s requests for access to the facility for a formal inspection by the expert witness.

 - 22 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

(Emphasis added.)

 But in actuality defendant’s counsel did not explain why the disassembly of the

stadium was not spoliation. Instead, defendant’s attorney explained the type of

inspection typically done in “these cases” and although plaintiff’s expert was prevented

from doing that type of inspection where plaintiff had fallen, he proceeded to argue a

video tape was sufficient and comparable to “an engineer . . . able to calculate the

energy that’s put on a board and . . . able to say, well these are within or without of

tolerance and accepted standards.” As plaintiff’s counsel argued in response:

 Well, I think what our expert would say is that the stadium
 was full of rotten boards. I mean, in his report he says: It
 is in my opinion the bleachers should have been condemned
 many years ago and replaced. And that’s what actually
 happened in this case after we requested to inspect the
 stadium. We sent three letters to the college, two to the
 college, one to the college’s insurance company, asking to
 allow our expert to come inspect the stadium. We got no
 response to that. Now they want to take the position, well
 you can just go on down there and inspect the stadium any
 time you want to. Well, that wasn’t what they said. They
 didn’t call me up or send me a letter or send me an e-mail
 and say, you can go inspect the stadium any time you want.
 They basically ignored us until they started tearing the
 stadium down. Coincidentally, our expert happened to
 show up unannounced because I eventually told him, look,
 they are not going to respond to us. You might as well try
 to go in and get in the stadium, see if you can do your
 inspection. The day he showed up, they are already
 dismantling the stadium. They didn’t replace one or two
 boards, they are replacing all the boards, which supports
 our position that it wasn’t just one board or two boards or
 three boards, the entire stadium had these boards that
 were rotten, that had shown advanced signs of weather and

 - 23 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

 age and loss of rigidity.

Furthermore, even if defendant’s alleged non-responsiveness to the request for

inspection coupled with the timing of the disassembly was innocent, the prejudice to

plaintiff is the same. See id.

 Taking the evidence in the light most favorable to plaintiff, she has established

the requisite forecast of evidence for a claim of negligence: defendant owed a duty to

plaintiff to inspect and maintain the bleachers to ensure they were not in a dangerous

state of disrepair; defendant’s failure to properly exercise that duty and maintain the

bleachers resulted in weakened and unstable boards which caught plaintiff’s foot and

caused her fall; plaintiff’s serious injury was foreseeable in light of the fact that the

bleachers were approximately 82 years old and composed of weakened and rotting

wood; and due to the age and state of the wood defendant had at the very least,

constructive notice of the defect. See Burnham, 229 N.C. App. at 339–40, 749 S.E.2d

at 79–80. Plaintiff sufficiently identified the place she fell and the reason for her fall.

To the extent plaintiff’s evidence lacks detail as to the state of the boards in the exact

area from which she fell, the jury could draw an adverse inference from defendant’s

removal of the boards after plaintiff’s repeated requests to not change the area before

inspection. See McLain, 137 N.C. App. at 184, 527 S.E.2d at 716.

 III. Conclusion

 The only question before this Court is whether plaintiff forecast enough

 - 24 -
 SHEPARD V. CATAWBA COLL.

 Opinion of the Court

evidence to survive summary judgment. Taking the evidence in the light most

favorable to her and drawing all inferences in her favor, the evidence presents a

genuine issue of material fact as to exactly where and how plaintiff fell. Based upon

plaintiff’s evidence, a jury could find that defendant failed to use reasonable care to

inspect and maintain the wooden bleachers; that many of the boards were weakened

and unstable; and that plaintiff’s foot was caught on a weakened board that flexed

when she stood up, tripping her and causing her to fall. A jury could also infer from

defendant’s disassembly of the bleachers after plaintiff’s repeated requests to allow

inspection that the results of such an inspection of the area where plaintiff fell would

have been harmful to defendant. We reverse the order of the trial court granting

summary judgment in favor of defendant and remand for further proceedings

consistent with this opinion.

 REVERSED AND REMANDED.

 Judge INMAN concurs.

 Judge BERGER concurs in the result only.

 - 25 -