**BURNHAM v. S&L SAWMILL, INC.**

[229 N.C. App. 334 (2013)]

NICHOLAS BURNHAM, Plaintiff

v.

S&L SAWMILL, INC., RANDY D. MILLER LUMBER CO., INC., and
RANDY D. MILLER, JANET B. MILLER, and RYAN MILLER,
Individually, and as Officers and Sole Owners of the Corporation, Defendants

No. COA12-1581

Filed 3 September 2013

**1. Negligence—injury to logging truck driver—no duty of care**

The trial court correctly granted summary judgment for defendants and correctly denied plaintiff's Rule 60(b)(2) motion for relief from the summary judgment in a negligence action by a logging truck driver injured by a falling log when he was unloading at defendant S&L Sawmill. The court correctly found that defendants had not violated any negligence-based duty owed to plaintiff.

**2. Negligence—unloading logging truck—not an independent contractor—duty of care**

A sawmill where a logging truck driver was injured while unloading logs did not owe plaintiff (the logging truck driver) a non-delegable duty of care due to the inherently dangerous nature of the work where plaintiff was not an independent contractor.

**3. Negligence—contributory—unloading logging truck**

There was no merit to the contention of a logging truck driver injured while unloading logs that his claim should not be deemed barred by contributory negligence. The record contained ample evidence that, assuming defendants were negligent as contended by plaintiff, a reasonable person in plaintiff's position would have been aware of the same risks and taken action to avoid sustaining injury.

**4. Negligence—unloading logging truck—assumption of responsibility by sawmill—evidence not sufficient**

The trial court did not err by denying plaintiff's motion for relief from a summary judgment in a negligence action by a logging truck driver injured by a falling log at defendant S&L Sawmill. The newly discovered evidence did not show that plaintiff's load had arrived in an unsafe condition, even if it sufficed to establish that defendants had assumed an affirmative responsibility when they saw that a load was unsafe.

## BURNHAM v. S&L SAWMILL, INC.

[229 N.C. App. 334 (2013)]

Appeal by plaintiff from orders entered 28 September 2012, 16 October 2012, and 27 November 2012 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 April 2013.

*Price, Smith, Hargett, Petho & Anderson, by Wm. Benjamin Smith, and the Law Office of Seth Bernanke P.C., by Seth M. Bernanke, for Plaintiff.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor, for Defendants.*

ERVIN, Judge.

Plaintiff Nicholas Burnham appeals from orders entered by the trial court granting summary judgment in favor of Defendants S & L Sawmill, Inc., Randy D. Miller Lumber Co., Inc., Randy D. Miller, Janet B. Miller, and Ryan Miller, denying Plaintiff's summary judgment motion, and denying Plaintiff's motion for relief from the trial court's order granting Defendants' summary judgment motion.[1] On appeal, Plaintiff argues that he forecast sufficient evidence, including an affidavit submitted after the entry of the summary judgment order, to support a determination that he was injured as a proximate result of Defendants' negligence and that the trial court's orders should, for that reason, be overturned. After careful consideration of Plaintiff's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed.

## I.  Factual Background

### A.  Substantive Facts

Plaintiff began working as a dump truck driver for McGee Brothers Company, Inc., in 2006. In the course and scope of his employment, Plaintiff loaded and transported dirt, gravel, brush, logs, and similar materials. Plaintiff had been taught how to load and operate dump trucks in such a manner as to keep the materials being transported from falling out of the trucks, including how to use binding straps. As part of his job responsibilities, Plaintiff was required to ensure that the truck he was operating had been safely loaded, including making sure that

---

1. As will be explained in more detail later in this opinion, the motion in question was advanced pursuant to a number of different provisions of the North Carolina Rules of Civil Procedure. However, in the interests of brevity, we will refer to this motion as a motion for relief from the trial court's order throughout the remainder of this opinion.

binding straps were used to keep loose materials, such as logs, from falling off the truck.

According to Plaintiff, one binding strap should be utilized to secure the front end of a load while the other should be utilized to secure the rear of the load. After the truck had been loaded, Plaintiff was required to conduct a "walkaround" in order to ensure that nothing was protruding from the truck and that the load on the truck could be safely transported. In addition, Plaintiff was responsible for determining if any items in the truck had shifted in transit to such an extent that they would fall when the binding straps were removed. After the straps had been released during the unloading process, Plaintiff would enter the truck and raise the truck bed to the point where the logs rolled out and the load was successfully dumped.

The logs that Plaintiff occasionally transported to sawmills came from job sites at which McGee Brothers was engaging in clearing land. Plaintiff delivered logs to multiple sawmills, including the sawmill operated by Defendant S & L Sawmill. Plaintiff was not required to communicate with S & L Sawmill prior to delivering a load of logs; instead, he was authorized to simply deliver a load of logs to the S & L Sawmill facility, unload the logs, and receive payment. Upon arriving at S & L Sawmill, Plaintiff would drive his truck onto a scale, enter the office to get a ticket indicating the weight of the truck's load, undo the binding straps which secured the load of logs, and unload the logs. Although Plaintiff would utilize his best efforts to find level ground upon which to unload the logs, he acknowledged being aware that "the yard was just dirt and uneven ground all over the place." However, if Plaintiff was uncomfortable with the angle at which he had parked the truck as part of the unloading process, he simply refrained from loosening the binding straps.

On 3 April 2008, Plaintiff went to S & L Sawmill for the purpose of unloading a truck full of logs. After weighing his truck, Plaintiff chose the location at which he wished to unstrap his load without having received any specific directions from Defendants. He had previously parked in the same spot without incident on multiple occasions and saw no reason to believe that it would be unsafe to do so in this instance. At the time that he selected a place to park, Plaintiff was aware that the ground at that location was "fairly," although not completely, level and that the truck would be leaning toward the location at which he would be standing. Although Plaintiff could have moved the truck to a location at which the load was not leaning in this manner, he did not do so because of his assumption, based on past experience, that nothing untoward would occur.

As he began the unloading process, Plaintiff released the front binding strap without incident. At that point, Plaintiff walked around the truck for the purpose of inspecting the terrain and confirming that the truck was safely positioned. During that process, Plaintiff did not observe that any portion of the load of logs was protruding from the truck so as to be in danger of falling off. As Plaintiff released the second binding strap, however, it "snapped out" towards him. Although he ducked his head towards the truck in the expectation that a log would fall off of the edge of the truck, Plaintiff's efforts at evading the falling log were unsuccessful. As a result of the injuries that he sustained when the falling log struck him, Plaintiff is now confined to a wheelchair.

S & L Sawmill had not acted to provide wheel stops for Plaintiff's use, to check to make sure that the dump truck could be safely unloaded before allowing Plaintiff to release the binding straps, to ensure that Plaintiff was protected by "racks or stanchions" during the unloading process, or to inquire as to whether Plaintiff was adequately trained to perform the unloading function before allowing Plaintiff to proceed with that process. According to Defendant Ryan Miller, S & L Sawmill's Vice President and manager of the facility at which Plaintiff was injured, no one, including drivers employed by McGee Brothers, had ever complained that the dump sites at S & L Sawmill were unsafe or interfered with their ability to unload their dump trucks. In addition, Ryan Miller stated that no one from S & L Sawmill was aware that any condition on Defendants' property posed any danger to Plaintiff or other dump truck drivers.

### B. Procedural History

On 30 March 2011, Plaintiff filed a complaint alleging that he had been injured as the result of Defendants' ordinary, gross, and willful and wanton negligence and seeking an award of compensatory and punitive damages. Among other things, Plaintiff asserted that Defendants had violated a number of regulations which had been promulgated by the Occupational Safety and Health Administration and that the business in which they were engaged was inherently dangerous, a fact which precluded them from delegating any of their safety-related responsibilities to anyone else. On 16 May 2011, Defendants[2] filed an answer in which

---

2. The answer in question was filed on behalf of all Defendants except for Ryan Miller, whom Defendants contended had not been served as of that date. However, Ryan Miller did join in an amended answer filed on behalf of all Defendants on 15 November 2011 which was substantively identical to the answer filed on behalf of the other Defendants on 16 May 2011. As a result, we will treat the answer filed on 16 May 2011 as having been filed on behalf of all Defendants.

they denied the material allegations set out in Plaintiff's complaint and asserted contributory negligence, gross contributory negligence, and negligence on the part of McGee Brothers as affirmative defenses.

On 28 June 2012, Defendants filed a motion seeking the entry of summary judgment in their favor on the ground that Plaintiff could not show that Defendants had breached any duty owed towards him and that the claims that he had asserted against Defendants were barred by Plaintiff's contributory negligence. On 10 July 2012, Plaintiff filed a motion seeking the entry of summary judgment in his favor on the issue of whether Defendants were engaged in an inherently dangerous activity sufficient to preclude them from assigning responsibility for their negligence to any other party. On 28 September 2012, the trial court entered an order granting Defendants' motion for summary judgment and denying Plaintiff's partial summary judgment motion.

On 4 October 2012, Plaintiff filed a motion for relief from the trial court's order pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b)(2), or, alternatively, for reconsideration of the trial court's order granting summary judgment in favor of Defendants pursuant to N.C. Gen. Stat. § 1A-1, Rules 52 and 59, on the basis of alleged newly discovered evidence set out in an attached affidavit executed by Gary Fisher, an S & L Sawmill employee, in which Mr. Fisher described steps that he had been instructed to take by Defendants in instances involving apparently unsafe loads of logs for the purpose of stabilizing the load in question. On 16 October 2012, the trial court entered an order denying Plaintiff's motion for relief from its earlier order. On 27 November 2012, the trial court entered an amended order, which contained findings of fact and conclusions of law, denying Plaintiff's motion for relief from the trial court's earlier order. Plaintiff noted an appeal to this Court from the 28 September 2012, 16 October 2012, and 27 November 2012 orders.

## II. Legal Analysis

### A. Summary Judgment Order

In his brief before this Court, Plaintiff argues that the trial court erred by granting summary judgment in Defendants' favor on the grounds that the record reflected the existence of numerous issues of material fact concerning the extent to which Defendants were engaged in an inherently dangerous activity, the extent to which Defendants operated the sawmill in a negligent manner, and the extent to which Plaintiff's claim was barred by contributory negligence. We do not believe that any of Plaintiff's challenges to the trial court's summary judgment order have merit.

**BURNHAM v. S&L SAWMILL, INC.**

[229 N.C. App. 334 (2013)]

## 1. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). Thus, this Court must "determine, on the basis of the materials presented to the trial court, whether there is any genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Util., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citing *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, __ N.C. __, 276 S.E.2d 283 (1981). In doing so, this Court "must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citing *Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657, *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983)). "A trial court's grant of summary judgment receives *de novo* review on appeal . . . ." *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008). Under a *de novo* standard of review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)) (internal quotation marks omitted).

## 2. Substantive Legal Analysis

### a. Negligence

[1] In order for a negligence claim to survive summary judgment, the plaintiff must forecast evidence tending to show "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630-31 (2000), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001) (per curiam) (citations omitted). Although Plaintiff argues at length that he sustained an injury as a result of Defendants' negligence, he has not clearly stated in his brief the nature of the duty that he believes to have been owed to him by Defendants. However, the cases cited in his brief in support of this argument all appear to involve the application of a premises liability theory. Such an approach seems reasonable to us, so we will utilize it

in analyzing the validity of this aspect of Plaintiff's challenge to the trial court's order.

The ultimate issue which must be decided in evaluating the merits of a premises liability claim is determining whether Defendants breached "the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). "In order to prove a defendant's negligence, a 'plaintiff must show that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence.' " *Fox v. PGML, LLC*, __ N.C. App. __, __, 744 S.E.2d 483, 485 (2013) (quoting *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342-43 (1992)). "A landowner is under no duty to protect a visitor against dangers either known or so obvious and apparent that they reasonably may be expected to be discovered . . . [and] need not warn of any 'apparent hazards or circumstances of which the invitee has equal or superior knowledge.' " *Von Viczay*, 140 N.C. App. at 739, 538 S.E.2d at 631 (2000) (quoting *Jenkins v. Lake Montonia Club, Inc.*, 125 N.C. App. 102, 105, 479 S.E.2d 259, 262 (1997)) (citations omitted). However, "[i]f a reasonable person would anticipate an unreasonable risk of harm to a visitor on his property, notwithstanding the lawful visitor's knowledge of the danger or the obvious nature of the danger, the landowner has a duty to take precautions to protect the lawful visitor." *Martishius v. Carolco Studios, Inc.*, 142 N.C. App. 216, 223, 542 S.E.2d 303, 308 (2001), *aff'd*, 355 N.C. 465, 562 S.E.2d 887 (2002). After carefully reviewing the record, we have been unable to find any record evidence tending to show that Defendants either created the condition which caused Plaintiff's injury or failed to correct such a condition after notice of its existence.

A careful examination of Plaintiff's argument with respect to the negligence issue indicates that his claim is predicated on the theory that Defendants had a duty to take affirmative action to ensure that he unloaded the logs which he was transporting on behalf of McGee Brothers to the S & L Sawmill in a safe manner. For example, Plaintiff argues that Defendants were negligent because they failed to ensure that a "knuckle boom" was used to stabilize the load on Plaintiff's dump truck prior to the loosening of the binding straps or failed to take other steps to ensure the safety of the manner in which employees of other entities, such as Plaintiff, unloaded their vehicles. Although Plaintiff directs our attention to a number of cases in support of his contention that Defendants could be held liable on the basis of the theory which he espouses, each of them involves a situation in which the plaintiff was injured as the result of a

condition which existed upon the defendant's property, *Newton v. New Hanover County Board of Education*, 342 N.C. 554, 556-57, 467 S.E.2d 58, 61 (1996) (involving a situation in which a police officer responding to a call at a school fell on a stairway); *Martishius*, 142 N.C. App. at 218-22, 562 S.E.2d at 305-07 (involving a situation in which the plaintiff made contact with a power line which crossed the defendant's property), or which resulted from affirmative action which the defendant took in a negligent manner. *Cowan v. Laughridge Constr. Co.*, 57 N.C. App. 321, 322-23, 291 S.E.2d 287, 288-89 (1982) (involving a situation in which the plaintiff fell on an inadequate ramp which had been constructed by the defendants).[3] In other words, Plaintiff has not cited any decision of this Court or the Supreme Court holding that a defendant had a duty to take affirmative action to protect an individual who lawfully entered upon the defendant's property from a harm which did not result from the condition of the defendant's property which the defendant had not created and of which the defendant was not aware. As a result, we will evaluate the validity of the trial court's decision to grant summary judgment in Defendants' favor utilizing the traditional standard applicable in premises liability cases.

The first problem with Plaintiff's claim, when evaluated in accordance with the applicable principles governing premises liability cases, is that he has never established that his injuries resulted from any condition that existed on Defendants' property. Although Plaintiff points to evidence that the place at which he sought to unload his dump truck was uneven, the record does not contain any indication that this condition in any way contributed to the fact that a log fell from the dump truck and landed on Plaintiff when he loosened the second binding strap. In addition, even if the uneven condition of the location at which Plaintiff attempted to unload the logs from his dump truck did, in fact, contribute to his injuries, the nature of the condition in question was just as apparent to Plaintiff as it was to Defendants, and yet he proceeded to attempt to unload his dump truck at that location. Moreover, the undisputed evidence in the record establishes that Plaintiff, rather than Defendants, selected the exact location at which the dump truck was to be unloaded and that nothing about the manner in which the logs were loaded on

---

3. Although a number of the decisions upon which Plaintiff relies were decided prior to the Supreme Court's decision in *Nelson*, which eliminated the common law "trichotomy" governing the duties owed by landowners to persons who came on their property in favor of a unitary negligence standard applicable to all persons lawfully on the premises, we see no need to consider whether any of these decisions would come out differently under our current approach to premises liability given our belief that such an undertaking would not make a difference in the outcome we reach in this case.

the dump truck indicated that there was any risk that they would fall, facts which deprived Defendants of any opportunity to warn Plaintiff of the danger that he faced. Finally, Plaintiff has not identified any unreasonable danger arising from the condition of Defendants' property, like the overhanging power lines at issue in *Martishius*. Although Plaintiff points to the inherent dangers involved in operating a sawmill and to various OSHA regulations applicable to such an operation, he has not established that those dangers arose from the condition of Defendants' property rather than from the nature of the activity in which both Defendants and Plaintiff were engaged. As a result, Plaintiff's contention that the trial court erred by finding that Defendants had not violated any negligence-based duty which they owed to him has no merit.

### b. Non-Delegable Duties

[2] Secondly, Plaintiff argues that Defendants owed him a non-delegable duty to provide him with a safe working environment due to the inherently dangerous nature of the work that Plaintiff was performing on Defendants' property. According to Plaintiff, Defendants owed him a duty to provide him with a safe working environment regardless of the fact that he was employed by McGee Brothers rather than Defendants because of the non-delegable nature of that duty. We do not find Plaintiff's argument persuasive.

According to well-established North Carolina law, "one who employs an independent contractor is not liable for the independent contractor's negligence"; however, "if the work to be performed by the independent contractor is either (1) ultrahazardous or (2) inherently dangerous, and the employer either knows or should have known that the work is of that type, liability may attach despite the independent contractor status." *Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000) (quoting *Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991)) (quotation marks and citations omitted). As a result, "[w]here a landowner hires an independent contractor to perform an inherently dangerous activity, and the owner knows or should know of the circumstances creating the danger, the owner has the nondelegable duty to the independent contractor's employees to exercise due care to see that . . . [these employees are] provided a safe place in which to work and [that] proper safeguards against any dangers as might be incident to the work [are in place]." *Dunleavy v. Yates Constr. Co.*, 106 N.C. App. 146, 153, 416 S.E.2d 193, 197 (quoting *Cook v. Morrison*, 105 N.C. App. 509, 517, 413 S.E.2d 922, 927 (1992)) (first alteration in original) (quotation marks omitted), *disc. review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992).

At the conclusion of a summary of a number of decisions rendered by this Court, Plaintiff states in his brief that:

> [t]he consistency of the holdings stated above is that each property owner or general contractor who accepted workers on their property failed to act to protect the safety of those employees when the property owner or the general contractor had displayed years of understanding of the worksite and obvious understanding of the risk imposed upon the individual who was hurt.

However, the decisions upon which Plaintiff relies do not sustain the claim which he has advanced in this case. In each of the decisions upon which Plaintiff relies, the non-delegable duty imposed upon the defendant landowners or general contractors did not arise merely because of their "understanding of the worksite" or the fact that the defendant "property owner or general contractor . . . accepted workers on their property." Instead, in each of the decisions upon which Plaintiff relies, the defendants had a contractual relationship with an independent contractor and the plaintiff was either the independent contractor with whom the defendant had contracted or the employer of such an independent contractor.

A person is an independent contractor of a landowner if he or she is a party to a contract involving the performance of work on behalf of or at the behest of the landowner and for the landowner's benefit in circumstances such that the contractor, rather than the landowner, controls the manner in which the job in question is performed. *See Bryson v. Gloucester Lumber Co.*, 204 N.C. 664, 665-66, 169 S.E. 276, 276 (1933) (holding that "an independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the orders or control of the person for whom he does it, and may use his own discretion in matters and things not specified"); *Black's Law Dictionary* 785 (8th ed. 2004) (defining "independent contractor" as "[o]ne who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it"); *Restatement (Second) of Agency* § 2(3) (1958) (defining an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking"). The record contains no indication that either Plaintiff or McGee Brothers had an independent contractor relationship with Defendants. Instead of entering upon Defendants' property for the purpose of performing work at that location for Defendants'

benefit, Plaintiff was delivering a load of logs to be sold to S & L Sawmill. In light of that fact, McGee Brothers was nothing more than Defendants' seller. Although a seller (or the employee of a seller) is entitled to the same legal protections which must be afforded to all persons lawfully on the landowners' premises, he or she is not entitled to the additional protections afforded to independent contractors, or their employees, who are hired by the landowner to engage in inherently dangerous activities. As a result, Plaintiff's challenge to the trial court's order predicated on the theory that Defendants owed Plaintiff a non-delegable duty to provide him with a safe working environment necessarily fails.

### 3. Contributory Negligence

[3] Finally, Plaintiff argues that his claim should not be deemed barred on contributory negligence grounds. According to the argument advanced in his brief, Plaintiff contends that the record reveals the existence of a genuine issue of material fact concerning the extent to which he was contributorily negligent given that Plaintiff "had the least experience of anyone involved in this case" in safely unbinding logs. Once again, we conclude that Plaintiff's argument lacks merit.[4]

According to well-established North Carolina law, a plaintiff cannot recover if he, too, was negligent where that negligence was a proximate cause of his injuries. *Muteff v. Invacare Corp.*, __ N.C. App. __, __, 721 S.E.2d 379, 384, *disc. review denied*, 365 N.C. 566, 724 S.E.2d 533 (2012). "[T]he existence of contributory negligence does not depend on [a] plaintiff's subjective appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior–the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Duval v. OM Hospitality, LLC.*, 186 N.C. App. 390, 395, 651 S.E.2d 261, 265 (2007) (quoting *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 670, 268 S.E.2d 504, 507 (1980)) (quotation marks omitted).

In seeking to persuade us that his claim was not barred by the doctrine of contributory negligence, Plaintiff relies on this Court's holding in *Cook v. Export Leaf Tobacco Co.*, 50 N.C. App. 89, 272 S.E.2d 883 (1980), *disc. review denied*, 302 N.C. 396, 279 S.E.2d 350 (1981). In *Cook*, the plaintiff, who was employed by an independent contractor that had been hired to perform maintenance work on the defendant's building,

---

4. We are aware that, having failed to find that the record evidence provided any basis for finding Defendants liable to Plaintiff, we need not address the issue of contributory negligence. As a result, our discussion of the contributory negligence issue should be understood as an alternative basis for upholding the trial court's order.

was injured when a portable elevator furnished by the defendant for the plaintiff's use fell into a parking lot while plaintiff was standing upon it. 50 N.C. App. at 91 272 S.E.2d at 885-86. The record evidence tended to show that, while the defendant had informed the plaintiff's employer that the elevator needed certain repairs, it later told the plaintiff that the problem had been fixed. *Id.* at 93, 272 S.E.2d at 887. Although the requisite repairs had not been performed, the defendant ordered the plaintiff to make certain repairs that required the use of the elevator. As a result, this Court held that:

> [u]nless a condition is so obviously dangerous that a man of ordinary prudence would not have run the risk under the circumstances, conduct which otherwise might be pronounced contributory negligence as a matter of law is deprived of its character as such if done at the direction or order of defendant.

*Id.* at 96, 272 S.E.2d at 888. Based upon this language, we believe that the essence of Plaintiff's position with respect to the contributory negligence issue is that his claim should not be barred on contributory negligence grounds on the theory that Defendants directed him to engage in conduct which was so obviously dangerous that his own negligence should be overlooked.

The facts at issue here are materially different from those at issue in *Cook.* As an initial matter, instead of being an independent contractor or the employee of an independent contractor, Plaintiff was simply lawfully on Defendants' premises in the capacity of an employee of a seller. In addition, Plaintiff was not instructed by Defendants as to where or how to unload the logs that had been transported on the dump truck he was operating. Instead, the undisputed record evidence establishes that Plaintiff selected the location at which the truck was to be unloaded and never asked for any sort of assistance in carrying out that responsibility. As a result, the principle enunciated in *Cook* simply has no application in this case.

Although the decisions of this Court and the Supreme Court have recognized that a plaintiff's contributory negligence does not bar recovery in certain instances, *e.g., Yancey v. Lea,* 354 N.C. 48, 51, 550 S.E.2d 155, 157 (2001) (holding that "[c]ontributory negligence is not a bar to a plaintiff's recovery when the defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries"), Plaintiff has not forecast evidence tending to show that any such exception exists here. For that reason, we see no basis for concluding that

Plaintiff's claim could not, at least in theory, be deemed barred by his own negligence. As a result, given that the record contains ample evidence tending to show that, assuming that Defendants were negligent in the manner contended for by Plaintiff, a reasonable person in Plaintiff's position should have been aware of the same risks and taken action to avoid sustaining injury. Thus, we conclude that Plaintiff's final challenge to the trial court's summary judgment order lacks merit.

## B. Motion for Relief From Order

[4] Secondly, Plaintiff contends that the trial court erred by denying his motion for relief from judgment on the grounds that Mr. Fisher's affidavit[5] created a genuine issue of material fact sufficient to preclude the trial court from granting Defendants' summary judgment motion. We disagree.

A challenge to a trial court's decision to grant or deny a motion for relief from judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b) or a motion for a new trial or other relief pursuant to N.C. Gen. Stat. § 1A-1, Rules 52 and 59, is reviewed under an abuse of discretion standard. *See Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 116 (2006) (stating that, "[a]s with Rule 59 motions, the standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion"). Assuming, without in any way deciding, that the other prerequisites for an award of relief of the nature sought by Plaintiff have been satisfied, we are unable to conclude that the trial court abused its discretion by denying Plaintiff's motions given our determination that the trial court correctly concluded that consideration of Mr. Fisher's affidavit would not have changed the outcome with respect to Defendants' summary judgment motion.

The essential thrust of Mr. Fisher's affidavit was that he had, on his own initiative or at the direction of Defendants, taken affirmative action to ensure that trucks delivering loads to S & L Sawmill were unloaded safely in the event that anyone observed that the items to be unloaded were situated in such a manner as to create a danger to those

---

5. In his affidavit, Mr. Fisher asserted that he had been employed at S & L Sawmill, that one of his duties was to operate a front end loader with a grapple hook attachment, that Ryan Miller and other S & L Sawmill personnel had instructed him to assist in the unloading of trucks, and that, if either Mr. Fisher or Ryan Miller observed that the load on a particular truck appeared to be unsafe, he would use the grapple hook to cover the truck's load during the unbinding process. In addition, Mr. Fisher asserted that he sometimes "got after" drivers "who had loaded the logs too high." Although Mr. Fisher had been present at the S & L Sawmill on the date of Plaintiff's injury, he had not been in a position to ascertain whether Plaintiff's load of logs had a dangerous appearance and did not express an opinion concerning that issue.

involved in the unloading process. However, neither Mr. Fisher nor anyone else testified that anything about the appearance of the load which Plaintiff brought to S & L Sawmill suggested that the load created a danger to anyone. In light of that fact, even if the information contained in Mr. Fisher's affidavit sufficed to establish that Defendants had assumed an affirmative responsibility for ensuring Plaintiff's safety during the unloading process, that duty only arose in the event that Defendants observed that Plaintiff's load was in an unsafe condition. The record does not, as we understand it, contain any such evidence. As a result, given that the information contained in Mr. Fisher's affidavit does not suggest that Defendants' summary judgment motion should have been denied, rather than allowed, we conclude that the trial court did not abuse its discretion by denying Plaintiff's motions for relief from the trial court's order.

## III.  Conclusion

Thus, for the reasons set forth above, we conclude that none of Plaintiff's challenges to the trial court's orders have merit. As a result, the trial court's orders should be, and hereby are, affirmed.

AFFIRMED.

Judges ROBERT C. HUNTER and STROUD concur.