IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-101

Filed: 18 February 2020

Mecklenburg County, No. 17-CVS-18381

STARR LYNN SHEPARD, Plaintiff,

v.

CATAWBA COLLEGE, Defendant.

Appeal by plaintiff from order entered 10 July 2018 by Judge Adam M. Conrad in Superior Court, Mecklenburg County. Heard in the Court of Appeals 16 October 2019.

> *Tin, Fulton, Walker & Owen, PLLC, by Cheyenne N. Chambers, for plaintiff-appellant.*

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Luke P. Sbarra, and Leila W. Rogers, for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals trial court order allowing defendant's motion for summary judgment and thus dismissing plaintiff's action. Because plaintiff has forecast evidence -- viewed in the light most favorable to her and giving her the benefit of any inferences from the evidence -- which presents a genuine issue of material fact as to defendant's negligence as the proximate cause of her injuries sustained in her fall on defendant's bleachers, we reverse and remand for further proceedings.

I.    Background

On 6 October 2017, plaintiff filed a complaint against defendant alleging that she was injured by defendant's negligence in maintaining its bleachers. Plaintiff alleged she was attending a baseball game, and when she stood up and began to move from her seat, a "wooden slat . . . moved in such a way that it allowed her foot to get caught under an adjacent wooden slat and caused her to be thrown off balance and she fell down the bleachers and was severely and permanently injured." Defendant answered plaintiff's complaint, denying the allegations of negligence and alleging plaintiff's contributory negligence as a defense.[1] On 18 May 2018, defendant filed a motion for summary judgment under North Carolina Civil Procedure Rule 56. On 10 July 2018, the trial court granted summary judgment in favor of defendant. Plaintiff appeals.

## II. Summary Judgment

Plaintiff contends the trial court erred in granting summary judgment in favor of defendant.

### A. Standard of Review

> The standard of review for a motion for summary judgment requires that all pleadings, affidavits, answers to interrogatories and other materials offered be viewed in the light most favorable to the party against whom summary judgment is sought. Summary judgment is properly granted where there is no genuine issue of material fact to be decided and the movant is entitled to a judgment as a matter of law.

---

[1] The defense of contributory negligence is not at issue on appeal, and we will not address it.

*Harrington v. Perry*, 103 N.C. App. 376, 378, 406 S.E.2d 1, 2 (1991) (citation omitted).

> A defendant is entitled to summary judgment as to all or any part of a claim, N.C.G.S. § 1A–1, Rule 56(b) (1990), if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. Specifically, a premises owner is entitled to summary judgment in a slip and fall case if it can show either the non-existence of an essential element of the plaintiff's claim or that the plaintiff has no evidence of an essential element of her claim. Only if the movant-defendant makes its showing is the nonmovant-plaintiff required to present evidence. If the defendant makes its showing, the plaintiff is required to produce a forecast of evidence showing that there are genuine issues of material fact for trial. All inferences of fact must be drawn against the movant and in favor of the nonmovant.

*Nourse v. Food Lion, Inc.*, 127 N.C. App. 235, 239, 488 S.E.2d 608, 611 (1997) (citations, quotation marks, and brackets omitted), *aff'd per curiam*, 347 N.C. 666, 496 S.E.2d 379 (1998); *see Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830, 562 S.E.2d 75, 79 (2002) ("Summary judgment is a drastic measure, and it should be used with caution, especially in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case.").

B.    Factual Background

Viewing the forecast of evidence in the light most favorable to plaintiff, *see Nourse*, 127 N.C. App. at 239, 488 S.E.2d at 611, the evidence tends to show that on 18 March 2016,  plaintiff was a spectator at a college baseball game at Newman Park.

Plaintiff's son was the pitcher in his second season of playing for defendant, Catawba College. The spectators were seated on wooden bleachers which were constructed in 1934.

Plaintiff was seated in her "usual spot" near the press box, further up in the bleachers than her husband, who customarily sat closer to the field at their son's games, but he was close enough to plaintiff to have a "perfect view" of her. Plaintiff testified that she stood up from her seat when she suddenly fell, falling about 13 to 15 feet down the bleachers and landing on the pavement, breaking her back as her "head went into the fence." Plaintiff does not remember the fall itself as she suffered major injuries that caused memory loss.

Plaintiff did not recall what happened between her fall and regaining consciousness in the hospital, but she stated during her deposition that she remembered she felt an issue with her foot being "trapped" immediately before her fall occurred. Plaintiff stated in her deposition that "I was seated in the bleachers along the first base side three rows down from the press box. I stood up, stepped to the right; the board flexed, caught my toe and I fell down the bleachers to the ground below." Plaintiff recalled that her foot felt "heavy, trapped, heavy, something stuck, something not right about it, like something was hanging onto it or it couldn't -- it couldn't go anywhere."

Plaintiff's husband testified that he saw plaintiff stand up, then he turned his head toward the field, and in the next moment saw that his wife had fallen down the bleachers. Plaintiff's husband stated she told him "[t]hat her foot got caught, that she couldn't get her foot -- evidently a board gave way and her foot fell underneath and that propelled her down the steps." Due to the severity of plaintiff's injuries, she was immediately taken to the hospital by an ambulance and her husband went with her so neither she nor her husband examined or took photographs of the exact spot where she fell at the time. Although plaintiff could not identify a specific board she fell on, at her deposition, plaintiff identified the place where she had been sitting by marking the "[g]eneral area" with a green X on a photograph of the bleachers.

On 7 December 2016, plaintiff's expert witness, Mr. David Harlowe, examined the bleachers. Mr. Harlowe noted in his report that he had "been performing risk management work in the athletic and fitness industries for over 21 years." Mr. Harlowe stated in his deposition that his inspection was delayed until December 2016 because plaintiff's counsel had been unable to get permission from defendant for him to do an inspection.

Plaintiff's counsel had notified defendant of plaintiff's claim by certified mail on 11 May 2016, within two months after her fall, and specifically requested "access to the stadium so that our expert witness can inspect the stadium." Plaintiff's counsel also asked defendant to

> accept this letter as our formal request to inspect and notice, pursuant to the law prohibiting spoliation, to not alter, repair, destroy, change, modify or take any remedial measure to change the condition of the stadium as it existed on the date in question prior to our opportunity to conduct a full inspection of the facility.

Plaintiff's counsel sent another certified letter to defendant on 14 June 2016, again repeating his request for access to the stadium for inspection by plaintiff's expert witness.[2]  The letter stated, "I again point out Catawba College is on notice to not alter, repair, destroy, change, modify or take any remedial measures to change the condition of Newsome Park as it existed on the date in question prior to our opportunity to conduct a full inspection and analysis of the facility."  In August 2016, plaintiff's counsel repeated his request to defendant's insurance carrier.

Despite plaintiff's repeated requests for defendant to preserve the condition of the bleachers pending an inspection, on 7 December 2016, the day Mr. Harlowe went to do the inspection, the bleachers in the area noted by plaintiff as where she fell were being disassembled.  Mr. Harlowe saw workers and equipment in the area where they were disassembling "where the incident happened."  Because several rows of boards in the area had already been removed, Mr. Hawlowe had to do the inspection of that area "from the sidewalk at the bottom." Mr. Harlowe stated in his deposition that the

---

[2] The record indicates that defendant received both certified letters.

bleachers in that area were disassembled either that day or the day before his arrival. "Only the metal frame" was left in the area where plaintiff had fallen.

In his inspection of the rest of the stadium, Mr. Harlowe "discovered multiple examples of rot and decay in other sections of the stadium where spectators were exposed to dangerous conditions." Mr. Harlowe's report noted that "[o]n initial viewing, the stadium looked like a relic from the World War II era in which it was constructed. My first impression was that it was a stadium in disrepair that had been neglected for many years." "According to the Catawba College athletic website, the Newman Park grandstand was erected in 1934. The site also states the 'recent' improvements were completed in 1996 and 2004, but does not state that the bleachers were updated in either of those projects."

Because the bleachers in the area where plaintiff fell had been disassembled just prior to his arrival, Mr. Harlowe was unable to take photographs of that area of the bleachers as it had existed when plaintiff fell, but he had access to photographs of the area taken prior to December 2016. The photos attached to the report show discolored wooden boards on a metal frame. "[T]he boards that made up the walkways and stairs for the stadium were old and rotting. Make-shift steps had been created by someone over the years to fill the large gap between seatboards and footboards." "[T]he wood used for stairs, footboards and seatboards was in poor condition throughout the stadium and particularly in the section where the plaintiff

fell." "The gap between seatboards and footboards in the stadium averaged approximately 13 1/2". This is three times larger than the recommended 4" gap stated by the [Consumer Product Safety Commission]." Mr. Harlowe opined "that the bleachers in Newman Park have never been inspected by a qualified person." "When viewing the wood used it is my opinion that the wood was either untreated or had surpassed its life-expectancy for safe use because of the visible rotting viewed at the time of the inspection." Mr. Harlowe concluded from his inspection

> that Catawba College has severely neglected the bleachers in the Newman Park baseball stadium which directly led to the plaintiff being injured. The inspection showed that most of the footboards, seatboards, and make-shift steps have been present for many years and show advanced signs of rot and lost rigidity when stepped on. It is evident from the condition of the bleachers that no safety inspections have ever occurred or if they have then the school has never taken any actions to correct the hazards. It is my opinion that the bleachers should have been condemned many years ago and replaced with aluminum bleachers.
>
> Additionally, the fact that a work crew was in the process of dismantling the bleachers while I was inspecting the stadium, and without any visible permit, shows that the school was trying to fix the problem under the radar to potentially reduce their liability in this case. In my opinion this was a direct admission of guilt on their part for their negligence in taking care of the stadium bleachers.

Defendant's forecast of evidence contradicts some of plaintiff's evidence regarding her location and actions at the time of the fall. For example, Mr. Jeffrey Childress, defendant's assistant athletic director and director of tennis at the time of

plaintiff's fall, testified that plaintiff was standing on the steps and holding the railing when she turned to look back, perhaps watching a foul ball, and missed a step and fell. Mr. Childress did not believe the condition of the steps contributed to her fall. Two other witnesses, both Catawba College students who were working at the game, also testified plaintiff was quickly descending the steps when she fell and that they had attended other games at this stadium and had never had any issues nor known of any issues with the bleachers. But no matter which witnesses a jury finds most credible, for purposes of summary judgment, we must view the evidence in the light most favorable to plaintiff. *See id.*

C.     Negligence Claim

Plaintiff contends the trial court erred in granting summary judgment in favor of defendant because she established a *prima facie* case of negligence.

> In order for a negligence claim to survive summary judgment, the plaintiff must forecast evidence tending to show (1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances. . . .
> The ultimate issue which must be decided in evaluating the merits of a premises liability claim is determining whether Defendants breached the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. In order to prove a defendant's negligence, a plaintiff must show that the defendant either (1) negligently created the condition causing the injury, or (2) negligently failed to correct the

condition after actual or constructive notice of its existence. A landowner is under no duty to protect a visitor against dangers either known or so obvious and apparent that they reasonably may be expected to be discovered and need not warn of any apparent hazards or circumstances of which the invitee has equal or superior knowledge. However, if a reasonable person would anticipate an unreasonable risk of harm to a visitor on his property, notwithstanding the lawful visitor's knowledge of the danger or the obvious nature of the danger, the landowner has a duty to take precautions to protect the lawful visitor.

*Burnham v. S&L Sawmill, Inc.*, 229 N.C. App. 334, 339–40, 749 S.E.2d 75, 79–80 (2013) (citations, quotation marks, ellipses, and brackets omitted). Further,

[w]hile not an insurer of its customers' safety, defendant is charged with knowledge of unsafe conditions of which it has notice and is under a duty of ordinary care to give warning of hidden dangers. Evidence that the condition (causing the fall) on the premises existed for some period of time prior to the fall can support a finding of constructive notice.

*Carter v. Food Lion, Inc.*, 127 N.C. App. 271, 275, 488 S.E.2d 617, 620 (1997).

The owner or proprietor of premises is not an insurer of the safety of his invitees. But he is under a duty to exercise ordinary care to keep that portion of his premises designed for their use in a reasonably safe condition so as not to expose them unnecessarily to danger, (but not that portion reserved for himself and his employees), and to give warning of hidden dangers or unsafe conditions of which he has knowledge, express or implied.

*McElduff v. McCord*, 10 N.C. App. 80, 82, 178 S.E.2d 15, 17 (1970) (citation and quotation marks omitted).

Defendant contends plaintiff failed to establish two key requirements for her claim: proximate cause and notice of the alleged defective condition. Both of defendant's arguments focus on plaintiff's inability to identify the exact place where she fell and the condition of the exact board at issue. Defendant contends that since plaintiff cannot identify the exact place where her foot was trapped, she cannot show either defendant's notice of a defective condition in that spot or that a defective condition in that spot was the proximate cause of her fall. We turn first to notice of the alleged defective condition.

1.      Notice of Defective Condition

Defendant argues plaintiff did not present any

> conclusive evidence demonstrating where she fell, or identified any specific condition of the bleachers that contributed to her fall. Since Mrs. Shepard and her expert did not identify the location and cause of her fall, it is impossible for Catawba to  have  had actual  or constructive notice of an unknown and unidentified defective condition that allegedly caused Mrs. Shepard to fall. As such, Mrs. Shepard has failed to forecast any evidence of a *prima facie* case of negligence against Catawba.

Defendant primarily relies on *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992) *abrogated by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998),[3] in contending plaintiff failed to demonstrate it had constructive

---

[3] *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), notes that the distinction in the level of care needed for invitees versus licensees, as noted in *Roumaillat*, is abolished, but *Roumillat's*

knowledge of the allegedly defective condition. In *Roumillat*, the plaintiff slipped and fell in a parking lot of a Bojangles restaurant. *Id.* at 61, 414 S.E.2d at 340-41. Plaintiff contended that there was slippery grease-like substance in the parking lot and this caused her to fall. *Id.* at 61, 414 S.E.2d at 341. The Supreme Court held that the plaintiff failed to forecast any evidence, other than her "bald assertion" that the "defendant knew or should have known of the greasy substance in its parking lot." *Id.* at 65, 414 S.E.2d at 343. The Court noted that the area was well-lit and plaintiff had "exited the restaurant within a few feet of the path she used to enter the restaurant, and her husband himself, less than an hour before, successfully traversed the very area on which plaintiff slipped." *Id.* at 66, 414 S.E.2d at 343-44.

As there was no indication of how long the substance had been there, how it got there, or that any of the defendant's employees had been notified of its presence, the Supreme Court noted that

> *[w]hen the unsafe condition is attributable to third parties or an independent agency*, plaintiff must show that the condition existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or to have given proper warning of its presence.

*Id.* at 64, 414 S.E.2d 343 (citation and quotation marks omitted) (emphasis modified).

---

discussion of the law regarding actual or constructive notice of a defective condition is still precedential.

The Court contrasted the plaintiff's fall on the substance to the fall of a grocery store customer on an alleged unsafe condition created by a third party in *Warren v. Rosso*:

> In *Warren*, a grocery store patron slipped and fell as a result of human excrement that was deposited on the floor of defendant's store. In support of its motion for summary judgment, defendant submitted affidavits of three employees, each stating that the excrement was deposited immediately before plaintiff stepped in it. Plaintiff submitted her own affidavit contradicting defendant's evidence that the excrement had fallen onto the floor immediately prior to her stepping in it. In her affidavit, plaintiff stated that the excrement was dried and had footprints in it. In her answers to defendant's interrogatories, plaintiff stated that she was at the checkout counter for approximately fifteen minutes and during that time she saw no one enter or leave the store. Moreover, in her affidavit, plaintiff stated that an employee of the store informed her that he knew the excrement was on the floor but that it was not his job to clean it up. On this basis, the Court of Appeals concluded that a dispute existed as to a material fact regarding the length of time the excrement was actually on the floor, making summary judgment for defendant inappropriate.

*Id.* at 65, 414 S.E.2d at 343.

The Supreme Court also noted *Southern Railway,* where the plaintiff "slipped and fell on some grain lying in a work area in which plaintiff regularly walked and had slipped time after time." *Id.* at 65-66, 414 S.E.2d at 343 (quotation marks omitted). The plaintiff in *Southern Railway* forecast evidence that

> [d]espite receiving complaints about the presence of the grain, defendant never took steps to remedy the situation.

> Because defendant was on notice of the dangerous condition and plaintiff had no choice but to encounter the condition in completing his job duties, the question of the reasonableness of defendant's failure to take additional precautions was for the jury to decide.

*Id.* at 66, 414 S.E.2d at 343 (citation omitted).

The primary difference between this case and *Roumillat* is that the unsafe condition in *Roumillat* was *created by a third party*, so evidence of the time period the condition had existed was crucial to show the defendant's notice or constructive notice of the condition. As to the greasy spot in the Bojangle's parking lot, the Court quoted *Hinson v. Cato's, Inc*:

> Even if a negligent situation could be assumed here, had it existed a week, a day, an hour, or one minute? The record is silent; and since the plaintiff must prove her case, we cannot assume, which is just a guess, that the condition had existed long enough to give the defendant notice, either actual or implied.
>
> The plaintiff has failed to meet the requirements which permit the cause to be submitted to the jury.
> 271 N.C. 738, 739, 157 S.E.2d 537, 538.

*Id.* at 67, 414 S.E.2d at 344.

*Roumillat* and defendant's argument both address unsafe conditions created by a third party. But in this case, the alleged dangerous condition was not created by a third party; the bleachers were constructed by defendant in 1934 and defendant was responsible for maintenance of the bleachers since their construction. This

situation cannot be compared to an ephemeral greasy spot of which the landowner had not been notified, which may have existed only for "a week, a day, an hour, or one minute[.]" *Id.*

Plaintiff must show "that the condition had existed long enough to give the defendant notice, either actual or implied." *Id.* Here, plaintiff did forecast evidence that the dilapidated condition of the bleachers had existed for a long time and defendant should have discovered the condition upon reasonable inspection. Plaintiff's evidence tends to show that defendant failed to maintain or inspect the wooden bleachers constructed over 80 years ago and used regularly for sporting events and that the wooden boards had deteriorated and weakened throughout the entire structure; this is evidence of at least constructive notice of the dangerous condition of the bleachers.

> The ultimate issue which must be decided in evaluating the merits of a premises liability claim, however, is whether the defendant breached the duty to exercise reasonable care in the maintenance of its premises for the protection of lawful visitors.
>> Reasonable care requires that the landowner not unnecessarily expose a lawful visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge. This duty includes an obligation to exercise reasonable care with regards to reasonably foreseeable injury by an animal. However, premises liability and failure to warn of hidden dangers are claims based on a true negligence standard which focuses attention upon the pertinent issue of whether

> the landowner acted as a reasonable person
> would under the circumstances.

*Rolan v. N.C. Dep't of Agric. & Consumer Servs.*, 233 N.C. App. 371, 382, 756 S.E.2d 788, 795 (2014) (citations, quotation marks, ellipses, and brackets omitted).

Plaintiff's forecast of evidence was not based upon a claim of an individual weakened or broken board which may not have been discovered, even if defendant had regularly inspected and maintained the bleachers, but instead tends to show that the entire structure had been neglected for many years. The wooden boards were rotting and decaying such that even a cursory inspection, according to plaintiff's expert, would have revealed the defective condition. Plaintiff's evidence is sufficient to create a genuine issue of material fact that defendant knew, or should have known in the exercise of reasonable care, of the dangerous conditions created by the allegedly rotting and decaying boards in the bleachers.

2.     Proximate Cause

Defendant also argues that plaintiff has failed to show that the defective condition of the bleacher was the proximate cause of her fall. Since plaintiff could not identify the exact place where her foot was caught, defendant contends she cannot show that a defective board caused her fall. Defendant focuses on two cases -- *Gibson v. Ussery*, 196 N.C. App. 140, 143, 675 S.E.2d 666, 668 (2009) and *Hedgepeth v. Rose's Stores*, 40 N.C. App. 11, 14, 251 S.E.2d 894, 896 (1979) -- in contending plaintiff failed

to properly forecast evidence that the allegedly defective bleachers were the proximate cause of her injuries.

In *Gibson*, this Court affirmed the trial court's order granting a directed verdict for the defendant, 196 N.C. App.140, 146, 675 S.E.2d 666, 670 (2009), based upon the absence of any evidence that a defective condition of stairs caused plaintiff to fall:

> plaintiff presented evidence in the form of witness testimony that Cynthia fell forward on the staircase, and that she did not appear to trip on anything. Testimony also showed that she was one of several to descend the staircase, but the only one to fall; none of the witnesses noticed any problems with the condition of the staircase as they descended. One witness testified that she went back to inspect the stairs and found the third step from the bottom to wobble to and fro under her foot. *However, there was no testimony about which stair Cynthia fell on and no testimony that anyone observed what caused her to fall.*
>     We agree with the trial court's conclusion that this evidence, taken in the light most favorable to plaintiff, does not permit a finding of all elements of a negligence claim against defendants. In evaluating the record, we look for evidence that takes the element of proximate cause out of the realm of suspicion. All of the testimony, taken in the light most favorable to plaintiff, provides no more than mere speculation that defendants' alleged negligence was the proximate cause of Cynthia's fall and the injuries that may have resulted from it. Doubtless Cynthia was injured in some manner as a result of her fall, but there is insufficient evidence to support a reasonable inference that the injury was the result of defendants' negligence.

*Id.*, at 144, 675 S.E.2d at 668–69 (emphasis added) (quotation marks omitted).

In *Hedgepeth*, the plaintiff contended that the defendant failed to maintain stairs in a reasonably safe condition based upon a slick, worn metal strip on the

stairway and the presence of potted plants on the steps which prevented her from using the stairrail.

> The only evidence introduced by the plaintiff as to the condition of the step on which she fell was that it was worn and that it was very slick. *Plaintiff, however, does not know on which step she fell, or even which foot slipped and caused her to fall. There is no evidence in this record that the condition of the step upon which plaintiff slipped was any different from that of the entire flight of steps.* Plaintiff's evidence tending to show that the steps had a metal strip on them, and that the metal strip was worn and that the steps were very slick apparently refers to all the steps. This is not sufficient evidence to support a finding by the jury that the steps had become so worn that their use would be hazardous to the store's patrons. *The unsupported allegations by the plaintiff that the set of steps on which she fell were worn or slick, without evidence of the particular defective condition that caused the fall, is insufficient to overcome a motion for a directed verdict.*

40 N.C. App. 11, 14–15, 251 S.E.2d 894, 896 (emphases added) (quotation marks omitted).

This Court also rejected the plaintiff's argument that the obstruction of the stairrail by plants caused her fall, since she did not actually know what caused her to trip, and she could only speculate that she would have been able to avoid a fall by holding onto the rail

> Plaintiff has the burden to show the cause of her fall. The evidence introduced by plaintiff leaves the cause of her fall a matter of conjecture. There is no presumption or inference of negligence from the mere fact that an invitee fell to his injury while on the premises, and the doctrine of res ipsa loquitur does not apply to a fall or injury of a

> patron or invitee on the premises, but the plaintiff has the
> burden of showing negligence and proximate cause.
> Plaintiff has failed to meet this burden.

*Id.* at 16, 251 S.E.2d 894, 897 (citations and quotation marks omitted).

This case is different from *Gibson* and *Hedgepeth* because plaintiff did clearly identify the place she was sitting in the bleachers, "along the first base side three rows down from the press box[,]" that she stood, stepped to the right, felt a board flex, catch her toe, and trap her foot, which resulted in her fall. *See Gibson* 196 N.C. App. at 144, 675 S.E.2d at 668–69; *Hedgepeth*, 40 N.C. App. at 14–16, 251 S.E.2d at 896–97. Plaintiff had marked the spot with an "X" on a photograph to illustrate her statements in her deposition. Further, plaintiff's husband witnessed her stand up in the area and saw where she fell.[4] Plaintiff's expert provided a detailed report as to the negligence of defendant in failing to weather-treat, repair, replace, or otherwise address outdoor rotten wooden bleachers with boards that were at least 75 years old, perhaps much older.

Defendant also argues that Mr. Harlowe did not inspect the area where plaintiff fell because she did not identify where she fell: "Even Mrs. Shepard's expert, David Harlowe, testified that he inspected and took photos on the opposite side of the stadium from where Mrs. Shepard was sitting. Again, *this was because Mr. Harlowe*

---

[4] Defendant's witnesses contend that plaintiff did not fall at her seat but that she was walking down the steps when she fell. But for purposes of summary judgment, we must take the evidence in the light most favorable to plaintiff. *Nourse*, 127 N.C. App. at 239, 488 S.E.2d at 611. There is a genuine issue of material fact regarding where plaintiff fell.

*did not know where Mrs. Shepard fell* so his inspection was focused on the entire stadium." (Emphasis added.) But we agree with plaintiff that this argument misrepresents Mr. Harlowe's testimony:

> [Defendant] misrepresented Harlowe's deposition testimony by asserting that he inspected the entire stadium because he did not know where Mrs. Shepard fell. Harlowe *knew* where Shepard fell. In fact, when Harlowe visited Catawba he noticed at the outset that Catawba was in the process of reconstructing the bleachers in question: They were actually disassembling -- they had taken down the first three or four rows near the press box I don't know what they did, but those boards were gone. And when asked why he did not visit the grandstand sooner, Harlowe testified that he waiting for Catawba's permission to inspect the premises.

(Citations, quotation marks, ellipses, and brackets omitted.)

While defendant is correct that plaintiff was unable to identify the exact board she stepped on, she did identify the specific area where she was sitting and then fell. Plaintiff's evidence also shows that the boards in the bleachers were over 75 years old, rotting, decaying, and flexed easily. Plaintiff testified that the board flexed easily, trapping her foot, and causing her fall.

Although we have already noted the essential factual differences between *Gibson* and *Hedgepeth*, we find it imperative to note another distinguishing feature of this case -- the potential spoliation of the evidence by defendant. Here, where defendant was on notice of plaintiff's claim and her repeated requests to inspect the bleachers prior to any destruction or repair of the area, the evidence of defendant's

removal of the boards in the exact area where plaintiff fell immediately prior to the

inspection by Mr. Harlowe creates an "adverse inference" against defendant that

evidence from an expert inspection of the area where plaintiff fell would be harmful

to defendant:

> "Destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988). Although destruction of evidence in bad faith "or in anticipation of trial may strengthen the spoliation inference, such a showing is not essential to permitting the inference." *Rhode Island Hospital*, 674 A.2d at 1234 (citations omitted); *see Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (adverse inference proper where plaintiffs, although not acting in bad faith, permanently destroyed relevant evidence during investigative efforts), and *Henderson v. Hoke*, 21 N.C. 119, 146 (1835) ("[i]t is sufficient if [the evidence] be suppressed, without regard to the intent of that act"); *see also Hamann v. Ridge Tool Co.*, 213 Mich.App. 252, 539 N.W.2d 753, 756–57 (1995) ("[w]hether the evidence was destroyed or lost accidentally or in bad faith is irrelevant, because the opposing party suffered the same prejudice").

*McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 184, 527 S.E.2d 712, 716 (2000).

The timing of defendant's disassembly of the exact area of the bleachers where

plaintiff had fallen immediately prior to Mr. Harlowe's inspection could have been an

unfortunate and innocent coincidence, but taking the evidence in the light most

favorable to plaintiff, *see Nourse*, 127 N.C. App. at 239, 488 S.E.2d at 611, the record

not only allows an adverse inference as to the condition of the boards in the area

against defendant, but would also allow an inference that defendant's destruction of the evidence was in bad faith.[5]  *See generally McLain*, 137 N.C. App. at 184, 527 S.E.2d at 716.

At the summary judgment hearing, defendant's counsel purported to address the spoliation argument as follows:

> Your Honor, typically in these cases what would happen is an engineer would go out.  Mr. Chandler [,plaintiff's counsel,] through the deposition testimony, went out to the facility.  *There's been some allegation in the brief of spoliation of evidence, and by answering your question I can also respond to spoliation.  There is actually no spoliation.* Mr. Chambers [(sic)] was there, took video of the facility.[6] And typically in those circumstances an engineer would go out and would say, well these boards are in or not in tolerance, an accepted tolerance.  And there would be weight, a load that would be put on them, and an engineer would be able to calculate the energy that's put on a board and the engineer would be able to say, well these are within or without of tolerance and accepted standards.  Those standards are usually the ANSI standards or ASTM standards for bleacher safety or general engineering standards.  An engineer would be able to say, based on this load and the amount of energy, these aren't safe stairs. We know video was taken by Mr. Chandler when he entered the facility, when he had access to the facility.

---

[5] Defendant's counsel before the trial court and on appeal stated to the trial court that his firm was not yet involved in the case between June 2016 and December 2016.  Defendant's counsel appeared in the case when the answer was filed in December 2017.  We are not suggesting any bad faith on the part of defendant's counsel.

[6] It is unclear how an attorney's video of the bleachers could substitute for testing of the strength of the boards.  The record before this Court did not explain why defendant never responded to plaintiff's counsel's requests for access to the facility for a formal inspection by the expert witness.

(Emphasis added.)

But in actuality defendant's counsel did *not* explain why the disassembly of the stadium was not spoliation. Instead, defendant's attorney explained the type of inspection typically done in "these cases" and although plaintiff's expert was *prevented* from doing that type of inspection where plaintiff had fallen, he proceeded to argue a video tape was sufficient and comparable to "an engineer . . . able to calculate the energy that's put on a board and . . . able to say, well these are within or without of tolerance and accepted standards." As plaintiff's counsel argued in response:

> Well, I think what our expert would say is that the stadium was full of rotten boards. I mean, in his report he says: It is in my opinion the bleachers should have been condemned many years ago and replaced. And that's what actually happened in this case after we requested to inspect the stadium. We sent three letters to the college, two to the college, one to the college's insurance company, asking to allow our expert to come inspect the stadium. We got no response to that. Now they want to take the position, well you can just go on down there and inspect the stadium any time you want to. Well, that wasn't what they said. They didn't call me up or send me a letter or send me an e-mail and say, you can go inspect the stadium any time you want. They basically ignored us until they started tearing the stadium down. Coincidentally, our expert happened to show up unannounced because I eventually told him, look, they are not going to respond to us. You might as well try to go in and get in the stadium, see if you can do your inspection. The day he showed up, they are already dismantling the stadium. They didn't replace one or two boards, they are replacing all the boards, which supports our position that it wasn't just one board or two boards or three boards, the entire stadium had these boards that were rotten, that had shown advanced signs of weather and

age and loss of rigidity.

Furthermore, even if defendant's alleged non-responsiveness to the request for inspection coupled with the timing of the disassembly was innocent, the prejudice to plaintiff is the same. *See id.*

Taking the evidence in the light most favorable to plaintiff, she has established the requisite forecast of evidence for a claim of negligence: defendant owed a duty to plaintiff to inspect and maintain the bleachers to ensure they were not in a dangerous state of disrepair; defendant's failure to properly exercise that duty and maintain the bleachers resulted in weakened and unstable boards which caught plaintiff's foot and caused her fall; plaintiff's serious injury was foreseeable in light of the fact that the bleachers were approximately 82 years old and composed of weakened and rotting wood; and due to the age and state of the wood defendant had at the very least, constructive notice of the defect. *See Burnham*, 229 N.C. App. at 339–40, 749 S.E.2d at 79–80. Plaintiff sufficiently identified the place she fell and the reason for her fall. To the extent plaintiff's evidence lacks detail as to the state of the boards in the exact area from which she fell, the jury could draw an adverse inference from defendant's removal of the boards after plaintiff's repeated requests to not change the area before inspection. *See McLain*, 137 N.C. App. at 184, 527 S.E.2d at 716.

### III. Conclusion

The only question before this Court is whether plaintiff forecast enough

evidence to survive summary judgment. Taking the evidence in the light most favorable to her and drawing all inferences in her favor, the evidence presents a genuine issue of material fact as to exactly where and how plaintiff fell. Based upon plaintiff's evidence, a jury could find that defendant failed to use reasonable care to inspect and maintain the wooden bleachers; that many of the boards were weakened and unstable; and that plaintiff's foot was caught on a weakened board that flexed when she stood up, tripping her and causing her to fall. A jury could also infer from defendant's disassembly of the bleachers after plaintiff's repeated requests to allow inspection that the results of such an inspection of the area where plaintiff fell would have been harmful to defendant. We reverse the order of the trial court granting summary judgment in favor of defendant and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judge INMAN concurs.

Judge BERGER concurs in the result only.